# GELBER EMPLOYEE NON-COMPETE AND NON-DISCLOSURE AGREEMENT

THIS EMPLOYEE NON-COMPETE AND NON-DISCLOSURE AGREEMENT ("Agreement"), is made by and between **GELBER GROUP, LLC,** a Delaware limited liability company, and its affiliates ("Gelber") and the undersigned person ("Employee", "you" or "your") (collectively the "Parties"). For purposes of this Agreement, "Gelber" shall be deemed to include all currently existing and future subsidiaries and affiliates of Gelber.

**WHEREAS,** Gelber is a firm engaged in the proprietary trading of financial, currency, commodity, energy and other instruments and derivatives thereof on various exchanges, contract markets, boards of trade, and electronic communications networks ("Exchanges") both domestically and internationally;

**WHEREAS,** Employee is being engaged to work for Gelber as provided herein;

**WHEREAS,** Gelber has developed Confidential Information (as defined in this Agreement) and Gelber has a protectable interest in maintaining the confidentiality of that Confidential Information;

**WHEREAS,** Gelber has developed proprietary automated systems to, among other things, interface with Exchanges and assist traders in executing trades effectively and efficiently ("Automated Systems") and Gelber has a protectable interest in maintaining the confidentiality of those Automated Systems;

**WHEREAS,** Gelber has developed unique business, trading and risk strategies to observe, evaluate and trade in financial, currency, commodity, energy and other instruments and markets ("Trading Strategies"), based upon research conducted by Gelber and its principals and upon the years of experience in the industry possessed by the principals of the Gelber, and Gelber has a protectable interest in maintaining the confidentiality of these Trading Strategies;

**WHEREAS,** Employee will come to possess vital confidential information about Gelber and Gelber's Automated Systems and Trading Strategies in the course of Employee's employment by Gelber;

**WHEREAS**, Employee acknowledges that Employee will receive from Gelber specialized knowledge and training in the business of Gelber, at considerable time and expense to Gelber;

**WHEREAS,** Gelber wishes to employ Employee, but only if it can obtain satisfactory assurances that Confidential Information and the Automated Systems and Trading Strategies to which Employee will become privy will be kept in the strictest confidence and will not be used to Gelber's detriment;

**NOW, THEREFORE,** in consideration of Gelber's agreement to employ Employee as described herein, and other good and valuable consideration, including the salary and benefits to be received by Employee, the sufficiency of which is hereby acknowledged, Gelber and Employee hereby agree as follows:

# 1. Representations Regarding Former Employment.

Employee represents and warrants to Gelber that:

(1) Except as disclosed to Gelber in writing prior to the execution hereof, you are not subject to any employment agreement, non-competition agreement, non-solicitation agreement, confidentiality agreement or other restriction that prohibits, restricts or limits you from performing your duties to Gelber, from providing information to Gelber or from soliciting any current or former employees or any person or entity;

(2) If you are subject to continuing obligations or restrictive covenants from a prior employer (including but not limited to non-solicitation, non-disclosure, non-interference, non-collusion or non-disparagement obligations), you have been, are now, and will remain in compliance with all such obligations or restrictions;

(3) You have not improperly removed, copied, reproduced or maintained (in paper or electronic form, including, without limitation, by electronic transmittal to another computer) any confidential or proprietary information belonging to any prior employer, and you will not use or disclose, any confidential or proprietary information belonging to any prior employer on behalf of Gelber;

(4) You understand that Gelber views its Automated Systems and Trading Strategies to be unique in the trading industry and therefore does not desire and in fact prohibits the use of any confidential or proprietary information belonging to any prior employer or any other trading firm; and,

(5) Your employment by Gelber will not violate any law or any agreement with any other employer or person.

## 2. Confidential Information.

**A. Representations Regarding Confidential Information**. Employee recognizes, acknowledges and agrees as follows:

(1) Gelber has invested significant time and money in developing "Confidential Information" as defined in this Agreement, that in your position with Gelber, you will be afforded special access to Gelber's commercially useful Confidential Information and that your disclosure or use of Gelber's Confidential Information or disclosure to third parties, other than for the sole benefit of Gelber, would cause Gelber great and irreparable harm. For purposes of this Agreement, "Confidential Information" means information, whether in oral, written, electronic or other form, that (a) is disclosed to Employee or of which Employee becomes aware as a consequence of or through Employee's employment with Gelber; (b) is not generally known outside of Gelber; (c) has value to Gelber; and (d) relates to the business of Gelber, including, *without limitation*:

(a) the Automated Systems and Trading Strategies, in each case including the implementation, testing, amendment, revision, improvement, enhancement and refinement thereof;

(b) computer programs, processes and software source and object codes, trading algorithms or formulae, data and systems and all related documentation and instructional, procedural and training materials related thereto, including all upgrades, updates, improvements, derivatives and modifications thereof and including programs and documentation in incomplete stages of design or research or development;

(c) lists or other compilations of products, instruments and markets traded by Gelber and Gelber's past, present or anticipated market positions;

(d) the existence and terms of Gelber's contractual relationships, including but not limited to those with suppliers, licensors, vendors, joint venturers, computer software and hardware vendors, clearing firms, prime brokers, introducing brokers, exchanges, clearing organizations, investment firms, commodity pool operators, commodity trading advisors, futures commission merchants, market making firms, issuers, distributors, broker/dealers and professional traders;

(e) the terms and basis of Gelber's compensation structure of its employees and contractors;

(f) Gelber's risk and market risk evaluation, assessment and application methods, systems, parameters and thresholds;

(g) lists or other compilations of past, existing or potential employees, members, partners, stockholders or investors;

(h) testing methods and results of Automated Systems and Trading Strategies;

(i) financial information of Gelber including without limitation pricing information, pricing methods, profit and loss information, costs, accounting methods and figures and profit methods and figures;

(j) research and development information in any form or format including such information in incomplete stages of design or research or development;

(k) information concerning communications systems and networks utilized by Gelber, whether owned, licensed or leased;

(l) mailing and contact lists, supplier lists and information concerning present, past or potential licensors, suppliers, customers, methods for developing and maintaining supplier, employee and other business relationships; and

(m) any information which you know, or reasonably ought to know, that Gelber considers to be confidential and proprietary.

You acknowledge, understand and agree that Confidential Information is not to be used for any purpose other than in the scope of Employee's employment with Gelber, and (subject to Section 2.B.4 and 2.B.5 below) is not to be disclosed to the public or third parties, and your understanding of this, along with any other procedures that the Gelber has or may introduce to further prevent disclosure of Confidential Information, are reasonably calculated steps by Gelber to maintain the confidentiality of this Confidential Information; and that Confidential Information, including, but not limited to, information regarding the Automated Systems and Trading Strategies, is unique to Gelber and provides Gelber with

a unique and valuable competitive edge over businesses with which Gelber competes through the fact that it is confidential;

(2) That Gelber's industry is highly competitive and that the competitors in this industry derive significant value from confidential and trade secret information. You further acknowledge and agree that your services to Gelber are unique in nature, and that you would not have had access to Gelber's Confidential Information absent your relationship with Gelber;

(3) That if you were to work for a competitor of Gelber where your duties for that competitor involved strategic, advisory, technical, creative, trading, market analysis, trading methodology, development, management or other services, similar to those performed for Gelber, it would be inevitable for you to disclose Confidential Information to the competitor and use Confidential Information to Gelber's detriment.

(4) That Gelber's business is worldwide in scope, as Gelber trades and may trade upon Exchanges existing in numerous countries around the world, Gelber competes and will compete on these Exchanges with other businesses located anywhere in the world, a business' ability to trade on these Exchanges is not limited by geographic location, and the Confidential Information of Gelber could be used to Gelber's detriment by any of these competitors located throughout the world. In addition, you acknowledge that Gelber's Automated Systems and Trading Strategies have been designed and developed with the purpose of enabling Gelber to have the ability and flexibility to trade upon all Exchanges worldwide;

(5) That any skills that you develop while employed by Gelber will be applicable to many different types of businesses, and thus, any restriction against you working for a competitor of Gelber will not prevent you from earning a living and utilizing the skills you develop while working for Gelber; and

(6) That Gelber will suffer great loss and irreparable harm if, during your employment with Gelber or thereafter, you were to make Gelber's Confidential Information known to others, or if Gelber's Confidential Information were to be used to compete against Gelber.

**B. Non-Disclosure and Non-Use of Confidential Information.**

(1) You agree that, during your employment by Gelber and thereafter, regardless of the reason or lack of reason for the termination of employment, to the maximum extent permitted by law: (i) you will not disclose such Confidential Information to any company or person without the prior written consent of Gelber; and (ii) you will not make any use whatsoever of such Confidential Information, except to the extent required in order to carry out your duties as an employee of Gelber. Without limiting the generality of the foregoing, you specifically agree that, should you at any time be employed by a Competitor (as defined below) of Gelber, you will not disclose Confidential Information to such Competitor, nor, in the course of your employment with such Competitor, make any use of any Confidential Information.

(2)     If you learn that any person or entity is taking or threatening to take any action that would compromise Confidential Information, you will promptly advise Gelber of all facts concerning such action or threatened action.

(3)     You agree that the protections for Confidential Information stated in this Agreement shall expire when the Confidential Information ceases to be a trade secret, know-how or confidential information under the law because the information has become available to the general public through lawful means and without breach of any agreement, including, without limitation, this Agreement. The foregoing rights are without prejudice to and do not restrict Gelber's rights under the Illinois Trade Secrets Act. Further, to the extent that Confidential Information does not become available to the general public as provided above, such Confidential Information is subject to protection indefinitely.

(4)     Nothing in this Agreement is intended to prohibit Employee from discussing personnel information with other employees, or with third parties who are not future employers of Employee or competitors of Gelber.  Additionally, nothing contained in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblowing proceeding or other proceeding before any federal, state, or local government agency, *e.g.* the EEOC, NLRB, SEC, etc., or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies.  Gelber further acknowledges Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.  Gelber also acknowledges Employee's rights to make truthful statements or disclosures about Unlawful Employment Practices which are defined to mean any form of unlawful discrimination, harassment, or retaliation that is actionable under Title VII of the Civil Rights Act of 1964 or any comparable state statue or any other related federal or state rule or law that is enforced by the Equal Employment Opportunity Commission or any comparable state agency.

(5)     Pursuant to 18 USC § 1833(b), an individual may not be held criminally or civilly liable under any federal or state trade secret law for disclosure of a trade secret: (a) made in confidence to a government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; and/or (b) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Additionally, an individual suing an employer for retaliation based on the reporting of a suspected violation of law may disclose a trade secret to his or her attorney and use the trade secret information in the court proceeding, so long as any document containing the trade secret is filed under seal and the individual does not disclose the trade secret except pursuant to court order.

**C. Return of Confidential Information and Gelber Property.** In the event that Employee's employment with the Gelber is terminated for any reason, then Employee shall immediately, and in any event no later than one business day after termination of employment, return all the property of Gelber and all Confidential Information (including, but not limited to, any computers, hard drives, removable media, thumb drives, personal data assistants and the contents thereof, as well as any passwords or codes needed to access or operate same, drawings, manuals, letters, notes, notebooks, reports, formulae, computer programs, computer data, memoranda, vendor/supplier lists, and all other documents, materials or copies thereof, in any media including any which relate in any way to Gelber's business) which were in any way obtained or developed by Employee during Employee's period of employment, and Employee shall not retain in Employee's possession after Employee's termination any property including or containing Gelber's Confidential Information, as defined in this Agreement.

**3. Notice, Non-Competition and Non-Solicitation.**[1]

   **A. Definitions.**

   (1)   "Restricted Period" means the entire period of your employment with Gelber and the twelve (12) months immediately following Employee's last day of employment with Gelber.

   (2)   "Competitor" means any person or entity which: (i) engages in any of the trading activities or other business of Gelber; (ii) provides consulting or information or information technology services relating to the trading activities or other business of Gelber; or (iii) owns or controls a significant interest in any entity that would be covered under (i) or (ii) if you are or may be required to perform any services for such entity.

   (3)   "Restricted Person" means any person who provided services to Gelber (whether as an employee, agent, independent contractor or otherwise) within the last twelve (12) months of your employment with Gelber, and with whom you had contact, about whom you had access to confidential personnel information, or for whom you had direct or indirect supervisory responsibility while you were a Gelber employee.

   **B. Notice.**

   (1)   If for any reason you resign from Gelber, you agree that you will inform Gelber (and, if possible, will provide advance notice) of your intention to leave and the date you intend to leave.

   (2)   Upon the end of your employment with Gelber for any reason, during the Restricted Period, you will promptly notify Gelber of your intention to commence any other employment (including self-employment or acting as an independent contractor) and provide the name of your employer and a description of your expected job title and

---

[1] Gelber will not seek to enforce the non-competition provisions in this Agreement in any state where such provisions have been deemed unenforceable.

responsibilities. Such information will be provided to Gelber before you commence other employment. You also agree to provide or cooperate in obtaining other information Gelber may need in order to evaluate the respective interests of you and Gelber relating to the post-employment restrictions in this Agreement. You agree that, during the Restricted Period, Gelber may contact your new Employer(s) regarding this Agreement.

C. **Non-Competition.**

(1) *Non-Competition Restriction.* Subject to the provisions of Sections 3.C.2 and 3.C.3, upon the cessation of your employment with Gelber for any reason, during the Restricted Period without Gelber's prior written consent, you will not become employed by, work for, become an owner or shareholder of, or otherwise provide services to any Competitor where your duties would involve performance of strategic, advisory, technical, creative, trading methodology, management or other services similar to the services you performed for Gelber. This Agreement shall not prohibit ownership of up to five (5) percent of the shares of stock of any Competitor whose stock is listed on a national securities exchange or is traded in the over-the-counter market.

(2) *Waiver of Non-Competition Restriction.* During the Restricted Period, if you have a legitimate interest in obtaining other employment that may violate this Agreement, you may request a waiver of the non-competition restrictions in Section 3.C.1 by providing Gelber with the following information: (i) the name of the employer that has expressed interest in hiring you ("Prospective Employer"); (ii) your anticipated job title and responsibilities at the Prospective Employer; (iii) the name and contact information of a manager or executive of the Prospective Employer with knowledge of your anticipated responsibilities; (iv) other requested information to enable Gelber to evaluate your waiver request. In its sole discretion, depending upon factors including the circumstances of your departure, the nature of your employment and responsibilities, compliance with this Agreement to date, information about the Prospective Employer, and other business factors, Gelber will determine whether to grant your waiver request. All waiver requests will be given good-faith consideration by Gelber, subject to your cooperation in obtaining information necessary for Gelber to evaluate the request.

(a) You will be notified in writing of Gelber's decision within ten (10) business days of providing all information required in Section 3.C.2. If you do not receive express notice from Gelber that your waiver request has been granted, then the non-competition restrictions in Section 3.C.1 apply in full and your compliance is required in full.
(b) If Gelber grants your waiver request, you will be granted a waiver of your obligations in Section 3.C.1 with respect to the Prospective Employer about which you provided information pursuant to Section 3.C.2. Any such waiver will be conditioned upon your and the Prospective Employer's adherence, for the duration of the Restricted Period, to information, representations and assurances provided to Gelber at the time Gelber evaluated your waiver request.
(c) A legitimate job opportunity must exist before you request a waiver. Any waiver request based on false or misleading information or that is otherwise not made in

good faith will be denied with no obligation on Gelber's part to provide any Restricted Period Pay.

(d) Your obligation to provide Gelber with the notice required under <u>Section 3.B.2</u> continues through the Restricted Period, regardless of whether a waiver is granted.

(e) A waiver by Gelber of your non-competition restrictions under <u>Section 3.C.1</u> may be revoked by Gelber if, during the Restricted Period, your job responsibilities change or your employment with the Prospective Employer terminates.

(f) If Gelber grants your waiver request, Gelber will not be obligated to provide any Restricted Period Pay to you during any period.

(3) *Restricted Period Pay*. If Gelber does not grant your waiver request, Gelber will pay you during the Restricted Period ("<u>Restricted Period Pay</u>"), subject to the terms and conditions set forth herein. Each Restricted Period Pay payment shall be equal to the lesser of (i) your highest gross amount of semimonthly base salary during your last twelve (12) months of employment at Gelber, or (ii) $6,250 (i.e., equivalent to an annual base salary of $150,000). Restricted Period Pay payments will be made on the 15th and the last day of every month and will commence on the first such day that occurs fourteen (14) days after the denial of a good-faith waiver request. Restricted Period Pay will continue throughout the duration of the Restricted Period, except as otherwise provided below. Restricted Period Pay is prospective only; in no event shall Restricted Period Pay be retroactive prior to a waiver request being made.

(a) Restricted Period Pay shall immediately cease and Gelber shall have no obligation to make any further Restricted Period Pay if you violate the terms of <u>Sections 2 or 3</u> of this Agreement, or if it is discovered that your waiver request was not made in good faith, was not based on a legitimate job opportunity, or was based on false or misleading information.

(b) You will be issued an IRS Form 1099 with respect to any Restricted Period Pay provided to you, and you agree to assume any and all tax liability for such pay. You further agree to indemnify and hold harmless Gelber from any and all tax liability, claim or demand relating to Restricted Period Pay.

(c) In the event you obtain employment during a period in which you are receiving Restricted Period Pay, Gelber shall have no further obligation to make any further Restricted Period Pay payments to you. You shall notify Gelber with three (3) days of commencing any employment during a period in which you are receiving Restricted Period Pay.

(d) You understand and agree that Restricted Period Pay is not an attempt to quantify the measure of damages that Gelber may suffer if you were to breach this Agreement. You further understand and agree that during the Restricted Period you are not an employee of Gelber and, except as otherwise required by law, you will not receive any benefits provided to employees of Gelber other than as expressly provided herein or as expressly provided in a benefits plan Gelber sponsors.

(e) If you engage in conduct that violates <u>Section 3</u> of this Agreement, you agree that, in addition to all other remedies to which Gelber is entitled, any obligation to continue making Restricted Period Pay payments shall immediately cease and

Gelber shall be entitled to recover the full amount of all Restricted Period Pay that you received.

   D. **Non-Solicitation.** During the Restricted Period, Employee will not, directly or indirectly, do the following, nor will Employee assist, encourage or advise any other person or entity to do the following: (i) hire or employ any Restricted Person; (ii) recommend or interview any Restricted Person for employment or other work; or (iii) solicit, advise, encourage or induce any Restricted Person to terminate his or her employment or other relationship with Gelber or any of its subsidiaries or other affiliates.

   E. **Binding Nature of Restrictions; Expiration of Restrictions.** The post-employment covenants agreed to herein shall be binding, regardless of the reason or lack of reason for the end of Employee's employment. Notwithstanding anything to the contrary in this Agreement, if Gelber (or its successors or assigns) completely ceases trading instruments on Exchanges both domestically and internationally, the Employee will no longer be bound by the restrictions contained in Section 3.

**4. Remedies for Breach.** Employee agrees that, if Employee were to breach any of the covenants set forth in Sections 2 or 3 above, Gelber would suffer irreparable injury. Employee further agrees that actual damages from any such breach may be difficult to ascertain and, in any event, may be inadequate. Accordingly, Employee agrees that, in the event Employee breaches or threatens to breach any portion of Sections 2 or 3 of this Agreement, Gelber shall be entitled, without posting of a bond, to injunctive relief enjoining or restraining such breach or threatened breach. Nothing herein shall be construed as prohibiting Gelber from pursuing any other remedy available to it for such breach. Employee and Gelber agree that, should Employee breach any provision of Sections 2 or 3 of this Agreement: (i) the period of restriction shall be extended by a period of time equal to that period beginning when such breach occurred and ending when the activities constituting such breach shall have terminated; and (ii) any work product created by Employee, directly or indirectly, in violation of this Agreement shall be destroyed.

   Upon a finding of or violation of this Agreement in any respect, Employee shall be obligated to pay Gelber all costs (including attorneys' fees, expert fees and other costs) incurred by Gelber in enforcing this Agreement.

**5. Non-Disparagement.** Employee hereby undertakes and agrees that he or she shall not make any oral or written statement or other communication that disparages or places Gelber or any of its subsidiaries or other affiliates or any of their respective principals, officers, directors, employees, investors, partners, managers, members, investors, products or services in a false or negative light; provided, however, that nothing in this Agreement shall preclude Employee from testifying as required by lawful subpoena or other legal process, making good faith reports to governing regulatory bodies or authorities, communicating within Gelber consistent with legitimate business needs, or making truthful statements or disclosures about Unlawful Employment Practices.

## 6. Invention Assignment.

**A. Work Made for Hire.** In recognition of the well-established principle that inventions, improvements of design, discoveries, original works of authorship and other work product (whether or not patentable or copyrightable) made by an employee and that relate to the employer's operation become the property of the employer, it is agreed by and between the Parties as follows:

(1) You agrees that you will devote your time, skill, knowledge and best efforts during the period of your employment to such duties as may be reasonably assigned to you, you will faithfully and diligently endeavor to further the best interests of Gelber during the period of said employment, and you will make and perfect inventions and discoveries, and create work product, which are useful in or related to Gelber's business.

(2) You agree to hold in complete trust for the benefit of Gelber, and to disclose promptly and fully to Gelber in writing, and to assign to Gelber, if so requested, any and all ideas, inventions, discoveries, writings and improvements made, discovered or developed by you, solely or jointly with others or under Gelber's direction, during the term of your employment by Gelber and which relate in any manner to Gelber's business. Any and all such inventions, discoveries or improvements shall be the sole and exclusive property of Gelber, whether patentable or not, and you agree that you will assist and fully cooperate in every proper way, at Gelber's expense, in securing and enforcing, for Gelber's sole benefit, patents or copyrights for such inventions, discoveries, writings or improvements in any and all countries and are deemed Confidential Information of Gelber. Within one year following the termination of your employment, for any reason or no reason, and without limiting the generality of the foregoing, any invention, discovery or improvement relating to any subject matter on which you worked or were informed during your employment by Gelber shall be conclusively presumed to have been conceived and made prior to the termination of your employment unless you clearly prove that such invention, discovery or improvement was conceived and made following the termination of your employment.

(3) You agree that all original works of authorship and other work product conceived or made by you (solely or with others or under Gelber's direction), including, without limitation, software object code and source code, are "works made for hire" such that Gelber will be deemed to be their author and original copyright owner. Should any such work subsequently be determined not a "work made for hire" as a matter of law, you hereby assign to Gelber (without additional compensation from Gelber) the entire right, title and interest, including copyright, in such work.

(4) You agree at the request of Gelber (but without additional compensation from Gelber) to execute any and all papers and perform all lawful acts which Gelber deems necessary for the preparation, filing, prosecution, and maintenance of applications for United States letters patent and foreign letters patent on inventions, discoveries and improvements, and registrations of copyright in works of authorship, and to execute such instruments as are necessary to assign to Gelber, its successors, assigns or nominee all of your right, title and interest in said inventions, discoveries, improvements and works of authorship, so as to

establish or perfect in Gelber, its successors, assigns or nominee, the entire right, title and interest to said inventions, discoveries, improvements and works of authorship, and also to execute any instruments necessary or which Gelber may deem desirable in connection with any continuation, renewal or reissue thereof, or in the conduct of any proceedings or litigation relating thereto. All expenses incurred by you by reason of the performance of any of the obligations set forth in this Section shall be borne by Gelber.

(5) You agree to attach hereto, concurrently with the execution hereof, a list and brief description of all unpatented inventions and discoveries, if any, made or conceived by you prior to your employment with Gelber and which are to be excluded from Section 6 of this Agreement. If no such list is attached at the time of execution of this Agreement, it shall be conclusively presumed that you have waived any right you may have to any such invention or discovery, which relates to Gelber's business.

**B. Exception**. The Parties acknowledge that this assignment does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of Gelber was used and which was developed entirely on Employee's own time, unless: (i) the invention relates to Gelber's business or demonstrably anticipated research or development; or (ii) the invention results from any work performed by Employee for Gelber. Execution of this Agreement constitutes Employee's acknowledgment of receipt of notification of this paragraph.

**7. Reasonableness of Restrictions.** Employee agrees and acknowledges that the covenants contained in this Agreement are reasonable in their scope and duration and may be enforced by specific performance or otherwise. Employee further agrees and acknowledges that Gelber's business is highly competitive and national and international in nature, Employee has occupied a position of trust and confidence with Gelber, the agreements and covenants contained in this Agreement are essential to protect Gelber, its Confidential Information and its goodwill, and the Gelber would be irreparably damaged if Employee were to provide services to any person or entity in violation of the provisions of this Agreement, and the scope and duration of the covenants set forth in this Agreement are reasonably designed to protect a protectable interest of Gelber and are not excessive in light of the circumstances. Employee further acknowledges that this Agreement shall survive termination of employment, for any reason or no reason. The Parties ask that if any court of competent jurisdiction were to consider any provision of this Agreement to be overly broad, based on the circumstances at the time enforcement is requested, that the court modify the provision and enforce the provision to the full extent that the Court deems it to be reasonable in scope.

**8. Separate Covenants.** The covenants contained herein are separate and are independent of one another. In the event any covenant is found to be unenforceable wholly or in part for any reason, the remaining covenants shall remain in full force and effect and shall constitute the agreement between the Parties.

**9. Binding Effect.** Employee agrees that Employee's obligations under this Agreement are binding upon Employee, Employee's heirs, executors, administrators, or other legal representatives or assigns, and that this Agreement inures to the benefit of Gelber, its successors, and assigns. If Employee performs services and duties for any subsidiary or other affiliated entity

of Gelber, the provisions of this Agreement shall apply and inure to the benefit of the subsidiary or other affiliated entity.

**10. Illinois Law; Jurisdiction.**  This Agreement shall be governed by and construed under the laws of the State of Illinois without giving effect to conflict of law principles.  Any action with respect to this Agreement or Employee's employment with Gelber shall be subject to the exclusive jurisdiction of the federal or state courts located in Chicago, Illinois; provided, however, that any action brought by Gelber to enforce the provisions of this Agreement may be initiated and litigated in any other venue in which the courts have personal jurisdiction over Employee, and Employee waives any objections to such jurisdiction or venue.  The Parties each waive any right to a jury trial of any claims arising from this Agreement and agree to have any matter heard and decided solely by the court.

**11. Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which when taken together shall be deemed an Agreement.

**12. Entire Agreement.**  This Agreement constitutes the entire understanding between Gelber and Employee with respect to its subject matter, and supersedes all earlier representations, understandings and agreements, whether oral or written, between Employee and Gelber solely with regard to the subject matter herein. Gelber's and Employee's rights and obligations under this Agreement may not be changed, modified, released, discharged, abandoned or otherwise terminated, in whole or in part, except in writing, signed by Employee and an authorized signatory of Gelber.

**13. Headings.**  The headings used herein are for convenience only and shall not be construed to limit or define the scope or meaning of any section or provision.

**14. Employment Relationship.**  Employee's employment by Gelber is at-will, and either Gelber or Employee may terminate this Agreement and Employee's employment at any time and for any reason, whether with or without cause or with or without notice.  Nothing contained in this Agreement shall be deemed to make Employee a partner or joint venturer of Gelber for any purpose.

**15. Legal Actions.**  During the term of this Agreement and following termination of Employee's employment with Gelber, Employee will contact Gelber's General Counsel if Employee is served with a subpoena or other legal process asking for a deposition, testimony or other statement, or other potential evidence to be used in connection with any lawsuit or proceeding to which Gelber is or may be a party. At Gelber's request, without further compensation, during or following Employee's employment with Gelber, Employee shall cooperate with Gelber to any reasonable extent in connection with any present or future litigation or other proceeding to which Gelber is a party or with which Gelber is involved, and any audit or other investigation of Gelber. "Cooperate" shall include, without limitation, testifying in connection with any such proceeding. If Employee's cooperation is required after Employee's employment with Gelber had been terminated for any reason, Gelber shall accommodate Employee's reasonable scheduling requests.

**16. Right of Publicity.** Gelber and its agents are permitted to use and distribute any pictorial or video images taken of Employee during the Employee's employment by Gelber as often as desired for any lawful purpose related to recruiting or in connection with business development initiatives (including without limitation, the evaluation by third parties of joint ventures, alliances or acquisitions). Employee waives all rights of prior inspection or approval and releases Gelber and its agents from any and all claims or demands that Employee may have on account of the lawful use or publication of such images as set forth above.

**17. Benefit and Assignment**. Gelber's subsidiaries and other affiliates shall be third-party beneficiaries under this Agreement and entitled to the benefits of Employee's obligations hereunder. Employee, on the one hand, and Gelber, its successors, assigns or affiliates on the other hand, shall have the right to enforce performance of the provisions of this Agreement. Gelber may, at any time and without further action by Employee, assign this Agreement and in the event of such assignment, the assignee shall succeed to all the rights held by Gelber under this Agreement. Employee shall not assign this Agreement.

**18. Signature and Effective Date.** Employee understands and agrees that, even if this Agreement is not actually signed by Employee as of the date Employee begins work for Gelber, it is nevertheless an initial condition of employment that this Agreement be signed by Employee, and the effective date of this Agreement shall be the date upon which Employee begins work for Gelber.

**19. Employee's Review of Agreement; Employee's Consultation with Counsel.** Employee has had a full opportunity to review the provisions of this Agreement, understands the provisions hereof, and has carefully considered its obligations. Additionally, Employee is hereby advised to consult with an attorney prior to execution of this Agreement, and is further advised that Employee has at least fourteen (14) calendar days to review this Agreement before signing it. The Parties desire that this Agreement not be strictly construed for or against either party as the drafter.

**EMPLOYEE**

*Jung Yup Lee*
Jung Yup Lee (Aug 16, 2022 20:59 CDT)
Signature

Jung Yup Lee
Printed Name

Date: Aug 16, 2022

# GELBER EMPLOYEE NON-COMPETE AND NON-DISCLOSURE AGREEMENT - 2022.1

Final Audit Report 2022-08-17

| | |
|---|---|
| Created: | 2022-08-11 |
| By: | Brittany Keller (bkeller@gelbergroup.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAANIIH8BZLDfryl3aQHcxsjiflvOQJFcdd |

## "GELBER EMPLOYEE NON-COMPETE AND NON-DISCLOSURE AGREEMENT - 2022.1" History

- Document created by Brittany Keller (bkeller@gelbergroup.com)
  2022-08-11 - 9:25:12 PM GMT- IP address: 165.225.62.19

- Document emailed to jaacobl@g.ucla.edu for signature
  2022-08-11 - 9:25:35 PM GMT

- Email viewed by jaacobl@g.ucla.edu
  2022-08-17 - 1:58:45 AM GMT- IP address: 71.239.155.173

- Signer jaacobl@g.ucla.edu entered name at signing as Jung Yup Lee
  2022-08-17 - 1:59:06 AM GMT- IP address: 71.239.155.173

- Document e-signed by Jung Yup Lee (jaacobl@g.ucla.edu)
  Signature Date: 2022-08-17 - 1:59:08 AM GMT - Time Source: server- IP address: 71.239.155.173

- Agreement completed.
  2022-08-17 - 1:59:08 AM GMT

Adobe Acrobat Sign